UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

OGI OCEANGATE TRANSPORTATION CO.
LTD.,

                       Plaintiff,           06 Civ. 9441 (RWS)

    -against-                      <u>OPINION</u>

RP LOGISTICS PVT. LTD. and
R. PIYARELALL INTERNATIONAL PVT.
LTD.,

                    Defendants.

------------------------------------X



A P P E A R A N C E S:

    <u>Attorneys for Plaintiff</u>

    LENNON, MURPHY & LENNON, LLC
    The Gray Bar Building
    420 Lexington Ave., Suite 300
    New York, NY 10170
    By:  Nancy Rebecca Peterson, Esq.

    <u>Attorneys for Defendants</u>

    CHALOS, O'CONNOR & DUFFY, LLP
    366 Main Street
    Port Washington, NY 11050-3120
    By:  Owen Francis Duffy, III, Esq.

**Sweet, D.J.**

Defendants RP Logistics Pvt. Ltd. ("RPL") and R.
Piyarelall International Pvt. Ltd. ("RPI") (collectively "the
Defendants") have moved under Supplemental Rule E(4)(f), Fed. R.
Civ. P., to vacate the process of maritime attachment and
garnishment issued in this matter on October 17, 2006, upon
motion by the plaintiff OGI Oceangate Transportation Co. Ltd.
("OGI" or the "Plaintiff") and, in the alternative, for an order
pursuant to Supplemental Rule E(7)(a), Fed. R. Civ. P., for
security.  This dispute between foreign corporations OGI, the
ship owner doing business in Bejing, the Peoples Republic of
China, and RPL (the charterer) and RPI, both doing business in
Kolkata (Calcutta), India, has so far engaged courts in China and
India relating to a charter party which has a provision for
mandatory Hong Kong arbitration.  For the reasons set forth
below, the motion to vacate the attachment is granted.

## Prior Proceedings and the Verified Complaint

This action was commenced on October 17, 2006, by the
filing of a verified complaint by OGI which alleged that OGI is a
foreign company, that RPL and RPI are Indian companies, and that
RPL chartered the M/V IKAL, owned by OGI, by charter party dated
June 21, 2006. (Compl. ¶¶ 2-6.)  The parties disputed certain

1

freight and demurrage charges.  The dispute was resolved by an
agreement which included the consignee China Metals and required
the payment of $45,000, which was paid by RPI. (<u>Id.</u> ¶¶ 7-9.)  A
subsequent dispute allegedly arose concerning demurrage accrued
at the discharge port. (<u>Id.</u> ¶ 10.)

In September 2006, according to OGI, RPL wrongfully
arrested the M/V UTHAI in India. (<u>Id.</u> ¶¶ 11-14.)

Pursuant to the charter party, all disputes are to be
submitted to arbitration in Hong Kong and OGI is preparing to
initiate such an arbitration. (<u>Id.</u> ¶¶ 15-16.)  According to OGI,
it expects to recover $1,441,464.21 in the arbitration, including
over $930,000 in damages from the alleged wrongful arrest of the
M/V UTHAI in India. (<u>Id.</u> ¶  17.)

According to OGI, RPL is a shell corporation through
which RPI conducts its business without separate identity and is
the alter ego of RPI, which pays RPL obligations. (<u>Id.</u> ¶¶ 18-24.)
OGI further asserts that RPL is one of several companies operated
as an entity known as the R. Piyarelall Group (<u>id.</u> ¶¶ 25-26),
which is controlled by the Agarwal Family (<u>id.</u> ¶ 27).  The
organization hierarchy, representatives, offices, and control of
the R. Piyarelall Group, as described, result in the allegation
that RPI is a party to the charter party between OGI and RPL (<u>id.</u>
¶¶ 28-35) or, alternatively, a partner, joint venturer, or

2

affiliate (id. ¶¶ 36-37).  The Complaint requests an order of attachment and garnishment on funds held in eleven enumerated banks. (Id. ¶ 38.)

On October 17, 2006, an ex parte order of attachment was filed.  An Electronic Fund Transfer ("EFT") in the amount of $430,898.44, a freight payment made by RPI as a shipper of cargo, was restrained. (Duffy Aff., Nov. 21, 2006 (the "Duffy Aff."), ¶¶ 86-87.)

The instant motion to vacate the attachment was heard on December 7, 2006.

**The Facts**

Counsel for the parties have submitted affidavits and exhibits setting forth the following facts.

RPI, incorporated in India on November 10, 1988, is an exporter of agro-products, industrial and mineral products, and one of its directors is also a director of RPL. (Id. ¶¶ 17, 19, 21.)  RPL was incorporated on September 9, 2003, and provides logistical and transportation support to shippers (id. ¶¶ 10, 12), files its tax returns on an independent basis, and maintains its own bank accounts (id. ¶¶ 14-15).  According to OGI, RPL and RPI have the same address, phone number, overlapping directors,

3

and are dominated by the R. Piyarelall Group. (Peterson Aff.,
Dec. 4, 2006 (the "Peterson Aff."), ¶¶ 58-69.)

In June 2006, RPI entered into an agreement with China
National Mineral Co. Ltd. ("China National") to sell 11,000
metric tons of iron ore fines to China National to be shipped
from India and delivered to China with the express understanding
that, upon completion of the initial shipment, China National
would purchase two further cargos of 20,000 metric tons each.
(Duffy Aff. ¶¶ 25-26.)

RPI retained RPL on June 21, 2006, to arrange as a
disponent owner, on behalf of RPI, as sub charterer/shippers, for
the carriage of the iron ore cargo from India to China on board
the M/V IKAL. (Id. ¶ 27.)  Pursuant to a "Fixture Note" and a
"Charter Party" agreement dated June 21, 2006, RPL chartered the
vessel, M/V IKAL, from OGI pursuant to which the M/V IKAL was to
carry the cargo of iron ore from India to China in exchange for
the payment of freight. (Id. ¶ 28.)

According to OGI, RPL presented or forged authorization
on an unauthorized bill of lading. (Peterson Aff. ¶¶ 16-21.)

The M/V IKAL loaded a portion of the cargo on June 24
and 25, 2006, but was delayed by a "stability problem" and was
unable to load all 11,000 tons. (Duffy Aff. ¶¶ 35-39.)  The M/V

4

IKAL sailed on July 4, 2006, for China. (<u>Id.</u> ¶ 42.)  On arrival
at the discharge port of Fang Chang, OGI disputed demurrage
calculations and refused to berth the vessel. (<u>Id.</u> ¶¶ 46-48.)  On
July 22, 2006, RPI, OGI, and China National agreed that the
payment of $45,000 would resolve OGI's claims.  (<u>Id.</u> ¶ 50.)
Although the payment was made, the cargo was not delivered. (<u>Id.</u>
¶¶ 53-55.)  China National commenced an action in China resulting
in a court order to release the cargo (<u>id.</u> ¶ 57), and China
National cancelled the contracts for future deliveries (<u>id.</u> ¶
60).

On October 13, 2006, RPL and RPI commenced proceedings
in the High Court of Kolkata to arrest the M/V UTHAI NAVEE as
security for their claim against OGI and the vessel was arrested.
(<u>Id.</u> ¶¶ 63-66.)  The M/V UTHAI NAVEE had been chartered by OGI,
and its owner succeeded in lifting the arrest early in November
2006. (Peterson Aff. ¶¶ 42, 47.)

**Discussion**

1.    **The Burden of Proof for Vacating a Maritime Attachment**

To begin the process by which a party may attach
another party's assets, a plaintiff must file a verified
complaint seeking attachment and an affidavit stating that, to

5

the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. Fed. R. Civ. P. Supp. Rule B(1).  Thereafter, Rule E(4)(f), Fed. R. Civ. P. Supp. Rule E, provides that any person claiming an interest in the attached property is "entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Id. Supp. Rule E(4)(f).

Under Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd., 460 F.3d 434 (2d Cir.2006), in a Rule E(4)(f) inquiry challenging a Rule B attachment, a plaintiff has the burden to show not only that it has met the filing and service requirements of Rules B and E, but also that: (1) it has a prima facie admiralty claim; (2) the named defendants cannot be found within the district; (3) the attached defendant's property was within the district; and (4) there is no statutory or maritime law bar to the attachment. Aqua Stoli, 460 F.3d at 445.  At the Rule E(4)(f) hearing, the defendant can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. Rule E(4)(f), advisory committee's note.

If the plaintiff meets its burden, the defendant may show that vacatur of the attachment would still be appropriate under certain limited circumstances, including when: "(1) the

6

defendant is subject to suit in a convenient adjacent jurisdiction; (2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." Aqua Stoli, 460 F.3d at 445.

## 2.    The Motion to Vacate the Attachment Is Granted

The Defendants have not contested that they cannot be found within the district or that the attached property of the defendant RPI was within the district.  Nor have the Defendants asserted that there is a statutory or maritime law bar to the attachment.  Rather, the issues presented here are whether OGI has shown that it has a valid prima facie admiralty claim against RPI and, if so, whether the Defendants have shown that the attachment warrants vacatur on other grounds.

### A.    Prima Facie Admiralty Claims

#### i.    The Standard

To sustain the attachment, OGI must demonstrate that it has "an in personam claim against the defendant which is cognizable in admiralty. . . .  In other words, the plaintiff's

7

claim must be one which will support a finding of admiralty jurisdiction under 28 U.S.C. § 1333." Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002) (quoting Robert M. Jarvis, An Introduction to Maritime Attachment Practice Under Rule B, 20 Journal of Maritime Law and Commerce, No 4 (October 1989) at 526 & n. 20).

Of the courts in this district that have considered the issue, the majority have interpreted Aqua Stoli to require the application of the prima facie standard when considering the adequacy of the claim asserted in the context of a maritime attachment. Compare SPL Shipping, Ltd. v. Gujarat Cheminex, Ltd., No. 06-CV-15375(KMK), 2007 WL 31810, at *3 (S.D.N.Y. Mar. 15, 2007); Fesco Ocean Mgmt., Ltd. v. High Seas Shipping, Ltd., No. 06 Civ. 1055 NRB, 2007 WL 76615, at *2 (S.D.N.Y. Mar. 12, 2007); Secil Martima U.E.E. v. Malev Shipping, et al., No. 06 Civ. 6345 (S.D.N.Y. Oct. 10, 2006) (transcript of Rule E(4)(f) hearing denying vacatur motion); Route Holding Inc. v. Int'l Oil Overseas, Inc., No. 06 Civ. 3428 (S.D.N.Y. Sept. 29, 2006) (order denying vacatur of maritime attachment); Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979 (S.D.N.Y. Aug. 15, 2006) (order vacating attachment), with Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 2006 U.S. Dist. LEXIS 77033 (S.D.N.Y. Oct. 23, 2006) (holding that the applicable standard for establishing the Aqua Stoli factors is "reasonable grounds" for an attachment). The relevant inquiry is therefore whether

8

OGI has pled a prima facie admiralty claim against RPI.  <u>See</u>
<u>Fesco Ocean Mgmt. Ltd.</u>, 2007 WL 766115, at *2 ("courts should
simply consider whether a plaintiff seeking to maintain a
maritime attachment has pled a prima facie case justifying that
attachment under Rule B").

Suits in admiralty are subject to Supplemental Rule
E(2)(a), which provides that:

> In actions to which this rule is applicable the
> complaint shall state the circumstances from which the
> claim arises with such particularity that the defendant
> or claimant will be able, without moving for a more
> definite statement, to commence an investigation of the
> facts and to frame a responsive pleading.

Fed. R. Civ. P. Supp. Rule E(2)(a).  "This heightened pleading
standard is not some pettifogging technicality meant to trap the
unwary, but, rather, a legal rule designed to counterbalance the
unique and drastic remedies that are available in <u>in rem</u>
admiralty proceedings." <u>P.R. Ports Auth. v. Barge KATY-B</u>, 427
F.3d 93, 105 (1st Cir. 2005) (noting that "[o]rdinary notice
pleading does not satisfy the stringencies of [the supplemental]
rules").

Here, the Complaint has alleged damages arising out of
the RPL breach of the charter party and the unlawful arrest of
the M/V UTHAI NAVEE in Kolkata. (Compl. ¶ 14.)  Although the
Complaint has alleged the liability of RPI as the alter ego,

9

partner, joint venturer, or affiliate of RPL (<u>id.</u> ¶¶ 35-37), OGI
has asserted that it has also alleged "a proper direct maritime
claim for wrongful arrest damages against both RPL and RPI."
(Pl.'s Mem. in Opp'n 2.)  Because none of these allegations
establish a valid prima facie admiralty claim against RPI, OGI
cannot meet its burden to sustain the attachment.  Even if it
could, however, there are other grounds sufficient to support
vacating the attachment.

### ii.  Breach of the Charter Party

        In the Complaint, OGI has asserted that a dispute arose
during the course of the charter regarding RPL's failure to pay
dead freight and demurrage, but that the dispute was resolved by
a tripartite agreement under which OGI was paid $45,000 by RPI to
resolve the dispute.  (Compl. ¶¶ 7-9.)  The Complaint further
alleges that another dispute arose regarding RPL's failure to pay
demurrage accrued at the discharge port.  (<u>Id.</u> ¶ 10.)  The
details of this second alleged dispute are not made clear in any
of the Plaintiff's submissions, which instead indicate that it is
the Defendants' protests regarding the validity of the tripartite
agreement that form the basis of OGI's claim for RPL's breach of
the charter party.  (Pl.'s Mem. in Opp'n 7.)  OGI, however,
continues to assert that the tripartite agreement is valid. (<u>Id.</u>)

        Any claim for breach of the charter party regarding

10

dead freight, demurrage and detention at load and discharge ports
appears to have been satisfied by the payment made to OGI under
the tripartite agreement.  OGI has accepted that payment, and
does not dispute the validity of the agreement.   Therefore, OGI
does not have a valid prima facie claim for breach of the charter
party.

Even if OGI were to have a valid prima facie claim
against RPL for breach of the charter party sufficient to sustain
the attachment, the receipt of the $45,000 in satisfaction of the
tripartite agreement militates in favor of vacatur, as will be
discussed further below.

### iii. Wrongful Arrest

Although the Defendants contend that OGI has failed to
assert a direct claim against RPI for wrongful arrest (Defs.'
Mem. in Supp. 10), they concede that both RPL and RPI caused the
arrest in question (Defs.' Reply 1).  Furthermore, it appears
from the High Court of Kolkata documents that RPI was a plaintiff
together with RPL in the allegedly unlawful arrest of the M/V
UTHAI NAVEE. (Duffy Aff. Ex. 16.)  Even assuming that OGI may
rely on submissions other than the Complaint to justify
maintenance of the attachment based on a direct claim of wrongful
arrest against RPI, see Tide Line, 06 Civ. 1979, at 13-16, 32-39
(allowing plaintiff to amend complaint where additional

11

allegations and evidence have been submitted to support a claim);
Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y.
2006) ("A court also may consider any allegations or evidence
offered in the parties' papers or at the post-attachment
hearing."), it is not clear that OGI has sufficiently pled a
prima facie claim of wrongful arrest against either of the
Defendants.

        In the Complaint, OGI asserts that the M/V UTHAI NAVEE
was arrested by RPL in September 2006, that the arrest was
wrongful, and that OGI was damaged in the amount of $930,962.01
as a result. (Compl. ¶¶ 11, 12, 14, 17.) With regard to the
instant motion, OGI has further asserted that during the arrest
proceedings, RPL and RPI inaccurately alleged that OGI had an
interest in the M/V UTHAI NAVEE when OGI had only chartered the
vessel from the vessel's head owner. (Peterson Aff. ¶¶ 41-42.)

        Neither party has made a choice of law argument with
respect to OGI's wrongful arrest claim. Without citing relevant
case law, Defendants have asserted that to sustain a claim for
wrongful arrest "in the U.S. or anywhere else, the claimant must
establish that the arrest arose from malice, bad faith or
reckless disregard of the other party's legal rights" (Defs.'
Reply 2), and that OGI has not asserted any such allegations
against either of the Defendants.

                                12

Without deciding the choice of law question, it appears
fairly certain that United States law would not apply to the
wrongful arrest claim here.  <u>See</u> <u>Rationis Enters. Inc. of Panama</u>
<u>v. Hyundai Mipo Dockyard Co., Ltd.</u>, 426 F.3d 580, 586 (2d Cir.
2005) (citing  <u>Hellenic Lines Ltd. v. Rhoditis</u>, 398 U.S. 306, 309
(1970); <u>Lauritzen v. Larsen</u>, 345 U.S. 571, 583-92 (1953);
<u>Carbotrade S.P.A. v. Bureau Veritas</u>, 99 F.3d 86, 90 (2d
Cir.1996)) (enumerating factors for choice-of-law analysis
involving maritime tort as follows:  (1) the place of the
wrongful act; (2) the law of the ship's flag; (3) the domicile of
the injured party; (4) the domicile of the shipowner; (5) the
place of the contract; (6) the inaccessibility of the foreign
forum; (7) the law of the forum; and (8) the shipowner's base of
operations); <u>Hawkspere Shipping Co., Ltd. v. Intamex, S.A.</u>, 330
F.3d 225, 234-35 (4th Cir. 2003) (citing <u>Lauritzen v. Larsen</u>, 345
U.S. 571 (1953)) (same); <u>Arochem Corp. v. Wilomi, Inc.</u>, 962 F.2d
496, 498-99 (5th Cir. 1992) (citing <u>Lauritzen</u>, 345 U.S. at 582;
<u>Gulf Trading & Transp. Co. v. Vessel Hoegh Shield</u>, 658 F.2d 363
(5th Cir. Unit A 1981), <u>cert. denied</u>, 457 U.S. 1119 (1982))
(same).

Without an understanding of the applicable law, the
Court is unable to determine whether OGI has a valid prima facie
claim of wrongful arrest.  Since OGI has the burden of
affirmatively showing that it has such a claim, taking the
strictest approach to this analysis and without more information,

13

Plaintiff has failed to meet its burden with respect to this claim of wrongful arrest.

### iv.  Alter Ego

OGI has also contended that RPL's acts in connection with the charter party and the unlawful arrest of the M/V UTHAI NAVEE were as the alter ego of RPI.  Because it has been determined that there is no claim for breach of the charter party and it appears that any claim for wrongful arrest can be asserted directly against RPI, it is not necessary for the Court to determine whether OGI has sufficiently alleged its alter ego claim.

### B.  Vacatur

Based on the foregoing analysis, OGI has failed to show that it has a prima facie admiralty claim in satisfaction of its burden to withstand a vacatur motion under Aqua Stoli.  Even if OGI could meet this burden, however, Defendants have sufficiently shown that vacatur would still be appropriate under the limited circumstances articulated in Aqua Stoli.

First, the Second Circuit held in Aqua Stoli that even if the plaintiff meets its burden, vacatur would be appropriate

14

if "the plaintiff has already obtained sufficient security for
the potential judgment, by attachment or otherwise." <u>Aqua Stoli</u>,
460 F.3d at 445.  Here, with respect to OGI's claim for breach of
the charter party, OGI has already received $45,000 from RPI in
satisfaction of the tripartite agreement resolving that dispute.
This is roughly the amount that OGI is claiming for demurrage,
dead freight and other charges in connection with its claim of
breach of the charter party.

Second, the Second Circuit articulated that an
attachment would be properly vacated "if the plaintiff and
defendant are both present in the same district and would be
subject to jurisdiction there, but the plaintiff goes to another
district to attach the defendant's assets." <u>Id.</u> at 444-45.  As
pointed out by the Defendants, with respect to OGI's claim for
wrongful arrest, both OGI and the Defendants were present in the
same jurisdiction during the arrest proceedings, namely Kolkata.
OGI did make an appearance during that proceeding and even
contemplated posting security to secure the release of the
vessel. (Defs.' Mem. in Supp. 9; Peterson Aff. 46-47.)

Lastly, the Second Circuit also held in <u>Aqua Stoli</u> that
"vacatur may be warranted when the defendant can show that it
would be subject to <u>in personam</u> jurisdiction in another
jurisdiction convenient to the plaintiff." <u>Id.</u> at 444.  Although
the <u>Aqua Stoli</u> court indicated that the concept of convenience

15

was to be narrowly circumscribed, the court was addressing the
issue in the context of the proximity of the Eastern and Southern
Districts.  See id.  Here, it is questionable whether the
Southern District of New York is more convenient to OGI than the
other jurisdictions implicated in this matter, including Kolkata
and Hong Kong.  Furthermore, there is the consideration that
United States law most likely does not apply to the wrongful
arrest claim and that the arrest itself was authorized by the
court in India, thereby implicating issues of international
comity.  See Royal & Sun Alliance Ins. Co. of Canada v. Century
Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006) (citing Finova
Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896,
898-99 (7th Cir. 1999); Bigio v. Coca-Cola Co., 239 F.3d 440, 454
(2d Cir. 2000)) (indicating proper consideration of international
comity principles requires evaluation of various factors, "such
as the similarity of the parties, the similarity of the issues,
the order in which the actions were filed, the adequacy of the
alternate forum, the potential prejudice to either party, the
convenience of the parties, the connection between the litigation
and the United States, and the connection between the litigation
and the foreign jurisdiction").

        Thus, when combined with these comity considerations,
the convenience issue speaks even more strongly against the
exercise of jurisdiction and therefore in favor of vacating the
attachment.

16

## Conclusion

Accordingly, for the forgoing reasons, the motion to vacate the order of maritime attachment is granted and the Complaint is dismissed without prejudice.

It is so ordered.

New York, NY
June 2/ , 2007

ROBERT W. SWEET
U.S.D.J.

17